UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAWN ADAMS WHEELAHAN<br>Plaintiff | CIVIL ACTION NO.: |
| | SEC. "      "   (    ) |
| versus | |
| | JUDGE: |
| The CITY OF NEW ORLEANS<br>Defendant | MAGISTRATE: |

## COMPLAINT

Plaintiff, Dawn Adams Wheelahan, brings this Complaint seeking declaratory and injunctive relief against defendant, the City of New Orleans, in response to the City's imminent threats to impose criminal and civil sanctions against her .

## INTRODUCTION

1.  The internet has revitalized the age-old practice of boarders and travelers seeking lodging in private residences. Travelers who don't require, or can't afford, the full range of amenities offered by hotels, or who wish to gather with friends or family in a single space rather than multiple hotel rooms, have turned to companies such as Airbnb and HomeAway to locate private homes willing to host them. Persons hosting travelers are thereby able to supplement their income, pay their mortgages, maintain their houses, and pay their taxes. It is only the internet that makes this practice different from, for example, what used to happen when

travelers who were not welcome in many hotels would seek out lodging in private homes.

2.   But the ease with which private accommodations can be located via the internet, and the extent to which that practice has been embraced by the traveling public, has raised the hackles of the hotel industry  which has launched a global lobbying juggernaut to persuade local governments to enact regulations to hamstring their competition. Governments have complied.

3.   The City of New Orleans (the City) has enacted  and continues to enact  an amalgam of unconstitutional ordinances in its City Code (the Code) and Comprehensive Zoning Ordinance (CZO) comprising violations of no fewer than four Amendments to the United States Constitution. The ordinances, among other violations, 1) restrain and restrict Plaintiff's truthful speech on the internet about her private residence; 2) mandate the number of guests Plaintiff may invite to her private home, denying her equal protection; 3) prohibit Plaintiff from hosting any private party ("social event") at all of any number of guests at her home; 4) authorize searches of her home and records without the opportunity for neutral precompliance review, in violation of the Fourth Amendment and without due process; 5) authorize excessive fines and other penalties for non-compliance, uncapped, in violation of the Eighth Amendment, enforced by placing liens on Plaintiff's property and discontinuance of electric service to Plaintiff's home, which, besides causing (a) destruction of the home by the growth of mold without ventilation, and (b) danger to the home and surrounding ones by disabling hard-

2

wired fire detectors, also 6) amounts to an unconstitutional taking of Plaintiff's property in violation of the Fifth Amendment because without electric service the residential property has no remaining use, and cannot be sold with the City's liens on it.

## JURISDICTION and VENUE

4.   Plaintiff brings this action under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. 1983 and 1988. This Honorable Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. 1331 (federal question). Venue is proper in the Eastern District of Louisiana under 28 U.S.C. 1391 because defendant resides in this district, is subject to personal jurisdiction in this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

5.   Declaratory relief is authorized by 28 U.S.C. 2201 and 2202. A declaration of law is necessary to determine the respective rights and duties of the parties.

## PARTIES

6.   Plaintiff, Dawn Adams Wheelahan, is a person of the age of majority and a  resident of Orleans Parish.

7.   Defendant, the City of New Orleans, is a political subdivision of the State of Louisiana and a municipal corporation organized under the laws of the State of Louisiana and the Home Rule Charter of the City of New Orleans, subject to the jurisdiction and venue of this Court. At all times relevant hereto the City acted pursuant to its authority as a municipality chartered under the laws of

3

the State of Louisiana.

FACTUAL ALLEGATIONS

8.   Plaintiff, Wheelahan, owns a large double house in Uptown New Orleans. The house has approximately 5500 square feet of living space, divided into two separate residences, with  several thousand square feet of additional ground floor storage space. The house had been divided into two condominiums when Wheelahan bought it; she filed and recorded the necessary papers to "unwind" the condominium shortly after the purchase, more than five years ago.

9.   Plaintiff  lives in one half of the house. She hosts family members and friends, and sometimes rents the other half.  The half that Plaintiff sometimes rents has four bedrooms (referred to as "sleeping rooms" in building codes), and three full bathrooms. These rooms meet and exceed all of the requirements of the relevant building codes. They are fully enclosed by walls, have doors to enter and exit them, and each of the bedrooms has at least two large windows to provide egress if necessary.

10.   For more than five years, in the summer, Plaintiff has hosted in the home a group of university scholarship students from another state  usually eight of them, though some years one or two more, or less. The scholars come to New Orleans during June and July for their "summer of service," to do volunteer work for various non-profit organizations, such as Liberty's Kitchen and the U.S. Attorney's Office. The summer is meant, in part, to be a bonding experience for the students, who are participants in a single scholarship program but attend rival

4

universities in the same state. Plaintiff's neighbors seem to welcome the scholars, and to her knowledge there has never been a complaint about them.

11.   The scholars referred to in the preceding paragraph are residing in Plaintiff's rental home now, for a period of approximately sixty days from June 1.

12.   Plaintiff also uses an internet platform administered by HomeAway, a division of the travel company, Expedia, to offer her home for rent for varying periods of time that are usually, but not always, less than thirty days. Plaintiff welcomes renters who wish to stay longer than thirty days, and her listing on the above-referenced website offers them a discount.

13.   In December, 2016, the Council of the City of New Orleans (the Council or City Council) adopted a series of ordinances amending the City's Comprehensive Zoning Ordinance (CZO) and City Code to authorize, define and regulate various categories of "short term rentals." The CZO defines short term rentals as rental of all or a portion of a residential dwelling unit for a period of less than thirty consecutive days. CZO Art.26.2.

14.   The CZO further defines sub-categories of short term rentals.  An "Accessory" short term rental is defined as one that is owner-occupied  either a single house or double  with no more than three guest rooms hosting no more than six guests. A "Temporary" short term rental is a residential dwelling unit, that need not be owner occupied, in which the entire unit  but no more than 5 bedrooms  may be rented, for no more than 90 days per year.  The CZO further provides that no more than two guests may occupy a bedroom in a "Temporary" short term

5

rental  thereby criminalizing, for example, a couple who allow their child to sleep in the room with them, as happens routinely in hotels. CZO Art.21.8.C.14.b.  The ordinances went into effect April 1, 2017.

15.   The CZO requires short term rentals to be licensed. CZO Art.21.8.C.14.a. The City Code provides a laundry list of licensing requirements and procedures, declaring that obtaining the required license to host guests in one's home "is a privilege, not a right, and may be revoked or not renewed . . . .". Ch. 26, Art. XI, §§ 26.613-620.  The Code requires "hosting platforms" such as Airbnb and HomeAway, that list homes available to rent online, to disclose non-public information about their users and listings, from their private business records, without subpoena or the opportunity for neutral pre-compliance review, in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments. Ch. 26, Art XI, §26-620.

16.   The Code specifies penalties and a non-exclusive list of violations in Chapter 26, Art. XI § 26.618, stating that any violation of that Article, or correlating provisions of the CZO, may subject a violator to "any remedy, legal or equitable, available to the city."  Violations include advertising or renting one's home  a "short term rental"  without a license, or outside the scope of what the regulations say is permitted by its various provisions. Penalties include daily fines, property liens, and discontinuance of electric service, and other penalties provided by the CZO.

17.   The "correlating provisions" of the CZO provide, at Art.1.6.B, that persons found guilty of violating its provisions "may be found guilty of a

6

misdemeanor punishable either by a fine, the minimum and maximum amounts as established in the Louisiana Revised Statutes, or not more than one-hundred fifty (150) days imprisonment, or both, or be held liable for a code violation as provided by Article II, Chapter 6 of the Code of the City of New Orleans, punishable by a fine or any other lawful measure(s) ordered by a hearing officer, <u>for each and every day that such violation continues</u>, and the correction of a violation does not restrain imposition of these penalties." The referenced Statutes limit penalties for municipal violations to $500 per violation or six months in jail or both.

18. Plaintiff, Wheelahan, did not challenge these ordinances at that time. Instead, in February, 2018, Wheelahan obtained a short term rental license from the City for half of her double house. Plaintiff applied for and obtained her license under the category of "Temporary Short Term Rental," because the half of the house that she intended to rent has four available bedrooms, apart from the fifth bedroom in the ground-floor space. Plaintiff does not and has never rented any of the rooms in the half of the house that she lives in.

19. Plaintiff invested considerably in improvements to her home to provide for guests, in reliance on the City's enactments, as did many other individuals and small businesses. Plaintiff's improvements include a new HVAC system, interior painting throughout the house, and new furniture for various rooms.

20. To Plaintiff's knowledge, none of her neighbors has ever lodged a complaint with the City or Department about her rental guests. To the contrary, Plaintiff's neighbors have referred their visiting friends and family members to her

rental home. But if someone had complained, the City has in place robust regulations to address noise, parties, and disorderly conduct, as evidenced by numerous nearby houses rented to groups of young adults, and to fraternities and sororities.

20. In August of 2018, in response to nothing that Plaintiff is aware of, the City's Department of Safety and Permits (the Department) demanded to inspect her rental home. Wheelahan allowed their inspector to do so. Shortly thereafter, the Department notified Plaintiff that her fifth bedroom, downstairs, did not comply with the City's requirements because the downstairs space also included a bathroom and refrigerator. Further, the Department notified Plaintiff that her fourth bedroom did not comply because, even though it is enclosed by four walls and has a framed door, and full size windows with egress to the outside as required by the International Building Code, the Department arbitrarily decided that hanging flexible fabric doors in the door frame, instead of a wooden door, did not meet the Department's requirements for a bedroom. These requirements do not appear in the Code or CZO, or anywhere else that Plaintiff has been able to find. They appear to be invented by the Department, and are arbitrary and capricious.

21. In August, 2018, the Department advised Wheelahan by email that they had issued her an "Accessory" license  an entirely different category than the "Temporary" license  permitting only three bedrooms of her five bedrooms to be rented, to no more than six guests. The Department further advised, by email, that they were doing so because Plaintiff's house was a double, as referred to in the

section of the ordinances defining "Accessory" short term rentals  presumably, the
Department concluded that the separate half of Plaintiff's double house was not a
"single unit" as referred to in the "Temporary" short term rental subsections.

22.     The Code provides that licenses are valid for one year and may be
renewed. Chapter 26, Art.XI, §26-616. But on April 24, 2019, less than a year since
the Department notified Plaintiff it had issued her an "Accessory" license, and
without further inspection, the City posted on the door of Plaintiff's house a notice
stating that the Department had determined that the property was out of
compliance with the City Code and CZO because (1) it was not licensed as a short
term rental; (2) the license was not displayed on the front of the house; (3) a valid
license number was not included in Plaintiff's online advertising; (4) required
information was not posted inside the house as required by the ordinances; and (5)
"the short term rental shall not adversely affected the residential character of the
neighborhood."

23.  Plaintiff has always displayed, and continues to display, in a front,
street-facing window the Accessory license granted by the City in August, 2018.
Plaintiff posted and continues to post its number both in her advertising and on a
placard inside the house, with the other information the ordinances require to be
posted there, There is nothing about Plaintiff's house that alters or adversely affects
the residential quality of the neighborhood  except, of course, the license that the
ordinances require posted in the front window.

24.  Plaintiff called the Department, noted the above facts, and asked why

9

the notice had been posted on her house, and why the City thought she was in violation of its ordinances. The Department's employee said Plaintiff's license had expired in February, 2018  when her initial Temporary but not her later Accessory license was issued by the Department  and that she should appear in person immediately to request renewal. Plaintiff did so, on more than one occasion between April and June, 2019.

25.  Each time when Plaintiff went to the Department with all required papers, including a paper copy of the filed, stamped document unwinding the condominium regime of her home (publicly available online from the Orleans Parish Notarial Archives), and also when Plaintiff applied for renewal online, Plaintiff was told by the Department's that she could not renew her license because (1) the City has enacted an ordinance establishing an Interim Zoning District that (a) prohibits all Temporary short term licenses, and (b) prohibits Accessory short term rental licenses except for a homeowner's primary residence, evidenced by a homestead exemption; and (2) Plaintiff's homestead exemption was issued for the address of the half of the double where she lives (1616), and not the consecutive address of the half that she sought a license for (1614).  That is, reversing its earlier contention that Plaintiff's house is a double, noted in Paragraph 21 above, the Department has now taken the position that the 1614 half of Plaintiff's double is an independent unit  a condo  ineligible for a license, even though Plaintiff "unwound" the condominium regime more than five years ago, and has a homestead exemption for the house. This conduct is arbitrary and capricious.

26.   On Friday, June 14, 2019, the City of New Orleans issued a Notice of Hearing, captioned "City of New Orleans vs Dawn A Wheelahan" commanding Plaintiff to appear at a hearing on July 17, 2019. The Notice advises that "based on an inspection on 4/5/2019, Plaintiff is accused of the ordinances by: 1) not having a license; 2) not displaying the license on the front facade of the house; 3) not including the license number in her listing advertising the house; 4) use of the rental for commercial or social events.

27.   Plaintiff has not advertised or rented her home for commercial events. Plaintiff avers that the City's ordinance prohibiting all social events of any kind in her home is unconsitutional and the ordinance as written is unconsitutionally vague. The ordinance effectively criminalizes having a family dinner, a family gathering, a small birthday party, and anything else that could be described as a "social event."

28.   On May 24, 2018, approximately a year after the City authorized short term rentals, and after many individuals and small businesses had invested significantly in buying, renovating and refurbishing homes relying on those enactments, the Council effected a legislative smash-and-grab: by Motion M-18-195, the Council enacted an amendment to CZO Article 19, thereby establishing an Interim Zoning District (IZD) that covers most of New Orleans. All Temporary category licenses are prohibited (comprising 51% of the total granted, according to the City's data). Accessory licenses are allowed only for primary residences whose residents have a homestead exemption. The IZD is in effect for nine months, with

11

two 180 day extensions allowed under CZO Article 19.3.B.3.

29. Plaintiff reasonably fears imminent prosecution by the City under its ordinances pertaining to short term rentals, including criminal penalties, because the City has accused her of violating these and commanded her to appear at a hearing. Moreover, the hearing is to be conducted not by a neutral fact finder, but instead, by a hearing officer who is an employee of the City and the Department accusing her of the violations.

## CAUSES OF ACTION

### FIRST CLAIM
(Fifth Amendment: unconstitutional taking of Plaintiff's property)[1]

30. Plaintiff re-alleges and incorporates the above allegations.

31. The penalties authorized by the ordinances, Chapter 26, Art. XI § 26.618, and particularly those authorizing discontinuance of electric service to Plaintiff's home, and placing liens on her property, effect a taking of Plaintiff's property without compensation, and without due process, in violation of the Fifth and Fourteenth Amendments to the U. S. Constitution. That is because without electric service, Plaintiff's residential property has no remaining use, and it cannot be sold with the City's liens on it.

32. Further, discontinuance of electric service to plaintiff's home endangers

---

[1]The Supreme Court recently overruled earlier precedent holding that plaintiffs must exhaust state court remedies before bringing a federal takings claim, holding that plaintiffs may bring a takings claim as soon as it arises. Knick v Township of Scott, Penn., slip op., No 17-647 (June 21, 2019).

the scholars currently living there, who are not renting short term, and endangers neighboring residences as well, by disabling hard-wired smoke detectors and causing mold to grow by lack of proper ventilation.

SECOND CLAIM
(Eighth Amendment: unconstitutional excessive fines)

33.   Plaintiff re-alleges and incorporates the above allegations.

34.   The penalties authorized by the ordinances, Chapter 26, Art. XI § 26.618, and the corresponding articles of the CZO are excessive fines and penalties that are disproportionate the violations that they punish, in violation of the Eighth and Fourteenth Amendments to the U. S. Constitution.

35.   The fines and penalties of the ordinances are imposed without due process in violation of the Fourteenth Amendment. The monetary fines compound daily, uncapped, and are disproportionate to the inconsequential violations that they punish. The CZO also authorizes jail sentences disproportionate to the short term rental violations they punish. The fines and other penalties are assessed not by a neutral hearing officer but by an employee of the City department accusing Plaintiff and others of violations, denying Plaintiff and others due process under the Fourteenth Amendment. Members of the Council have unabashedly stated that these fines should be assessed, used, and increased, to fund other matters.

36.   The penalties authorizing discontinuance of electric service to Plaintiff's property, in New Orleans's tropical climate, threaten damage and destruction to Plaintiff's property disproportionate to the inconsequential violations they punish.

13

## THIRD CLAIM
### (First Amendment: unconstitutional prior restraint )

37.  Plaintiff re-alleges and incorporates the above allegations.

38.  The City's ordinances prohibiting Plaintiff from truthfully advertising and describing her private residential property on the internet are a prior restraint of speech that is presumptively unconstitutional.


## FOURTH CLAIM
### (First Amendment: unconstitutional content-based restriction)

39.  Plaintiff re-alleges and incorporates the above allegations.

40.  The ordinances pertaining to Plaintiff's speech on the internet are a content-base restriction that infringes Plaintiff's and other property owners' rights to free expression, in that they prohibits truthful expression of a description of Plaintiff's home, which has more than three bedrooms. The ordinances also prohibit Plaintiff from saying that guests may gather at her residence for a private party or other non-commercial social event.

41.  The City has no compelling interest in preventing Plaintiff from advertising an accurate description of her home on the internet; and no compelling interest in preventing her from offering to host private parties and non-commercial social events from at her residence.

42.  Even if the City had a compelling interest in regulating Plaintiff's internet speech about her private residence, the City's regulatory scheme is not so narrowly-tailored that no less restrictive measure would satisfy its purported

interest. The City's regulatory scheme and its restrictions on Plaintiff's speech are therefore unconstitutional under the First Amendment.

## FIFTH CLAIM
### (Fourth Amendment: unreasonable search and seizure)

43.  Plaintiff re-alleges and incorporates the above allegations.

44.  The ordinances require disclosures of non-public information from Plaintiff's, and her internet host, HomeAway's, records, without subpoena, without probable cause, and without pre-compliance review by a neutral authority, in violation of the Fourth Amendment and the due process clause of the Fourteenth Amendment. Plaintiff's and HomeAway's interest in the privacy of their records and their rental guests' information is well-establish by Supreme Court precedent.

## SIXTH CLAIM
### (Fourteenth Amendment: equal protection)

45.  Plaintiff re-alleges and incorporates the above allegations.

46. The ordinances deny to Plaintiff the rights to rent and advertise her residential property that the ordinances afford to other, similarly situated homeowners. This is a violation of the equal protection clause of the Fourteenth Amendment to the U.S. Constitution.

## SEVENTH CLAIM
### (Fourteenth Amendment: due process)

47.  Plaintiff re-alleges and incorporates the above allegations.

48.  The ordinances deny to Plaintiff rights afforded similarly situated

homeowners, and assess fines and penalties against Plaintiff for their violation, without pre-compliance review, without review by a neutral fact finder, without any compelling state interest, and therefore, without due process, in violation of the Fourteenth Amendment to the   U. S. Constitution.

49.   The disclosures required by the ordinances, Ch. 26, XI, §26-620, set forth at Paragraph 15 above, are required to be produced without subpoena, without pre-compliance review by a neutral fact finder, and without any compelling state interest, in violation of Plaintiff's right to due process under the Fourteenth Amendment.

WHEREFORE, on the basis of the foregoing, Plaintiff respectfully requests the following:

(1)  A preliminary injunction barring Defendant, the City, and its officers, agents, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with it, from enforcing the ordinances referred to herein, with respect to what the ordinances define as "short term rentals;"

(2)  After due proceedings, a permanent injunction barring Defendant, the City, and the persons and entities listed in the preceding paragraph from enforcing the ordinances challenged herein;

(3) A declaratory judgment that the City's and the Council's actions, policies, procedures, embodied in the ordinances referred to herein, are an unconstitutional violation of the First, Fourth, Fifth Amendments to the United States Constitution,

as well as the due process and equal protection clauses of the Fourteenth

Amendment;

(4) Reasonable attorney' fees, expenses and costs under 42 U.S.C. 1988 and

any other applicable law; .

(5) Any further relief that the Court deems necssary and proper, and all

general and equitable relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ Dawn Adams Wheelahan
**Dawn Adams Wheelahan**
La. Bar No. 19263
1616 Valmont Street
New Orleans, Louisiana 70115
Telephone: 512-689-1153
Email: dwheelahan@gmail.com