UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAWN ADAMS WHEELAHAN** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 19-11720** |
| **THE CITY OF NEW ORLEANS** | **SECTION: "G"(2)** |

## ORDER

Before the Court is Plaintiff's "Unopposed Motion to Recuse."[1] Plaintiff seeks recusal of the Court pursuant to 28 U.S.C. § 455(a) because she asserts that "reasonable people would question the Judge's impartiality, in view of her previous position as City Attorney for the defendant City of New Orleans."[2] Having considered the motion, the record, and the applicable law, the Court will deny the motion

### I. Background

On July 17, 2019, Plaintiff filed a Complaint in this Court against the City of New Orleans (the "City").[3] Also on July 17, 2019, Plaintiff filed a First Amended Complaint.[4] In the First Amended Complaint, Plaintiff alleges that she owns a large double house in the Uptown

---

[1] Rec. Doc. 9.

[2] *Id.* at 1.

[3] Rec. Doc. 1.

[4] Rec. Doc. 3.

neighborhood of New Orleans, Louisiana.[5] Plaintiff alleges that she lives in one half of the house, and uses the other half to host family members, friends, or renters.[6]

Plaintiff states that in December 2016, the City Council adopted a series of ordinances amending the City's Comprehensive Zoning Ordinances and the City Code to authorize, define, and regulate various categories of "short term rentals," which went into effect on April 1, 2017.[7] Plaintiff alleges that the Comprehensive Zoning Ordinances establish sub-categories of short term rentals including "Accessory Short Term Rentals" and "Temporary Short Term Rentals."[8] Plaintiff further alleges that on May 24, 2018, the City Council enacted another amendment to the Comprehensive Zoning Ordinances establishing an Interim Zoning District, prohibiting "Temporary Short Term Rentals" within the Interim Zoning District, and allowing "Accessory Short Term Rentals" licenses only for primary residences whose residents have a homestead exemption.[9]

According to the Amended Complaint, in February 2018, Plaintiff obtained a license from the City, which authorized short term rentals for half of her home under the category of "Temporary Short Term Rental."[10] Plaintiff alleges that in August 2018 the City's Department of Safety and Permits (the "Department") inspected Plaintiff's rental home.[11] Plaintiff further alleges

---

[5] *Id.* at 4.

[6] *Id.* at 5.

[7] *Id.* at 6.

[8] *Id.*

[9] *Id.* at 12.

[10] *Id.* at 8.

[11] *Id.* at 9.

that following the inspection she was notified by the Department that it had issued her an "Accessory Short Term Rental" license.[12]

According to the Amended Complaint, on April 24, 2019, the Department posted a notice on Plaintiff's door stating that the property was not in compliance with City ordinances because: (1) it was not licensed as a short term rental; (2) the license was not displayed on the front of the house; (3) a valid license number was not included in Plaintiff's online advertising; (4) certain information was not posted inside the house as required by the ordinances; and (5) "the short term rental shall not adversely affected [sic] the residential character of the neighborhood."[13]

Plaintiff alleges that she appeared before the Department on several occasions between April and June 2019 to request renewal of the license, but each time she was told that the license could not be renewed.[14] Plaintiff further alleges that on June 14, 2019, the City issued a Notice of Hearing commanding Plaintiff to appear at a hearing on July 17, 2019 for allegedly violating the City ordinances in the following ways: (1) "not having a license;" (2) "not displaying the license on the front facade of the house;" (3) "not including the license number in her listing advertising the house;" and (4) "use of the rental for commercial or social events."[15] Following the hearing, Plaintiff alleges that "the hearing officer employed by the City assessed thousands of dollars of fines against Plaintiff, and other penalties, including refusal to grant her any future short term rental license, without review by a neutral authority."[16]

---

[12] *Id.*

[13] *Id.* at 10.

[14] *Id.* at 10–11.

[15] *Id.* at 11–12.

[16] *Id.* at 18.

Plaintiff alleges that the City ordinances violate her rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments by: (1) restraining and restricting her truthful speech on the internet about her private residence; (2) mandating the number of guests Plaintiff may invite to her private home; (3) prohibiting Plaintiff from hosting any private party at her home; (4) authorizing searches of her home and records without the opportunity for neutral precompliance review; (5) and authorizing excessive fines and penalties for non-compliance.[17] Plaintiff seeks injunctive relief barring the City from enforcing the ordinances to "short term rentals," a declaratory judgment that the City's actions are unconstitutional, and reasonable attorney's fees, expenses, and costs.[18]

On August 6, 2019, the City filed an unopposed motion for an extension of time to answer,[19] and on August 7, 2019, this Court granted the City until September 4, 2019 to file its answer.[20]

On August 8, 2019, Plaintiff filed the instant "Unopposed Motion to Recuse."[21] In the motion, Plaintiff seeks recusal of this Court pursuant to 28 U.S.C. § 455(a) and the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*[22] Plaintiff contends that "reasonable people would question the Judge's impartiality, in view of her previous position as City Attorney for the defendant City of New Orleans."[23] The City does not oppose the motion.[24]

---

[17] *Id.* at 3.

[18] *Id.* at 18–19.

[19] Rec. Doc. 7.

[20] Rec. Doc. 8.

[21] Rec. Doc. 9.

[22] *Id.* at 1 (citing 486 U.S. 847 (1987).

[23] *Id.*

[24] *Id.*

## II. Legal Standard

Pursuant to 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "The goal of section 455(a) is to avoid even the appearance of partiality."[25] "In order to determine whether a court's impartiality is reasonably in question, the objective inquiry is whether a well-informed, thoughtful and objective observer would question the court's impartiality."[26] However, "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified."[27]

In assessing a motion to recuse under Section 455(a), the court should be guided "by an independent examination of the facts and circumstances of the particular claim."[28] The Fifth Circuit "has recognized that section 455(a) claims are fact driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue."[29] "Thus, if a reasonable man, cognizant of the relevant circumstances surrounding a judge's failure to recuse, would harbor legitimate doubts about that judge's impartiality, then the judge should find that section 455(a) requires his

---

[25] *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988)

[26] *Trust Co. of Louisiana v. N.N.P.,* 104 F.3d 1478, 1491 (5th Cir. 1997) (citing *United States v. Jordan*, 49 F.3d 152, 155–58 (5th Cir. 1995)).

[27] *Sensley v. Albritton*, 385 F.3d 591, 598 (5th Cir. 2004) (quoting *Laird v. Tatum*, 409 U.S. 824, 837 (1972)).

[28] *Republic of Panama v. Am. Tobacco Co. Inc.*, 217 F.3d 343, 346 (5th Cir. 2000) (internal citations omitted).

[29] *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999) (citing *Jordan*, 49 F.3d at 157).

recusal."[30] "[T]he decision to recuse is committed to the sound discretion of the trial court[;]"[31] however, "[i]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal."[32]

### III. Analysis

In the instant motion, Plaintiff's sole contention is that recusal of the undersigned Chief United States District Judge is warranted pursuant to Section 455(a) because "reasonable people would question the Judge's impartiality, in view of her previous position as City Attorney for the defendant City of New Orleans."[33] Indeed, the Judge served as City Attorney for the City of New Orleans from May 2010 to October 2011. The Judge ceased working for the City of New Orleans nearly eight years ago, when she was appointed to the bench.

The Fifth Circuit addressed a similar situation in *Chitimacha Tribe of Louisiana v. Harry L. Laws Co., Inc.*[34] On appeal, the plaintiff argued, *inter alia*, that the district court erred in denying a motion to disqualify because the district judge formerly represented one of the defendants.[35] The Fifth Circuit found this argument without merit, noting that "Section 455(b)(2) only requires a judge to disqualify himself if 'he served as a lawyer in the matter in controversy.'"[36] Additionally, the Fifth Circuit found that the relationship between the district judge and the defendant terminated

---

[30] *Id.* (internal citations omitted).

[31] *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997).

[32] *Id.* (citing *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995) (per curiam)).

[33] Rec. Doc. 9 at 1.

[34] 690 F.2d 1157 (5th Cir. 1982).

[35] *Id.* at 1166.

[36] *Id.*

6

at least six years earlier, when the district judge was appointed to the bench, and was "too remote and too innocuous to warrant disqualification under" Section 455(a).[37]

As discussed by the Fifth Circuit in *Chitimacha Tribe of Louisiana*, 28 U.S.C. § 455(b)(2) requires disqualification "[w]here in private practice [the judge] served as lawyer in the matter in controversy." Section 455(b)(2) is not applicable here because the Judge did not serve as a lawyer in the matter in controversy. Furthermore, the mere fact that the Judge represented the City almost eight years ago is "too remote and too innocuous to warrant disqualification under" Section 455(a).[38]

Additionally, the Judicial Conference of the United States' Committee on Codes of Conduct recommends that newly-appointed federal judges who are withdrawing from private practice consider "a self-imposed automatic rule of disqualification" for a period of "at least two years, recognizing that there will be circumstances where a longer period is more appropriate."[39] All the events at issue in this case occurred more than five years after the undersigned Chief United States District Judge was appointed to the bench. Plaintiff challenges the constitutionality of ordinances enacted by the City Council in December 2016 and May 2018.[40] Furthermore, Plaintiff alleges that the City first notified her that her property was not in compliance with the ordinances on April 24, 2019,[41] and a hearing was held on July 17, 2019.[42] Plaintiff has not pointed to anything

---

[37] *Id.*

[38] *Id.*

[39] *See* Financial Settlement and Disqualification on Resignation from Law Firm, Advisory Op. No. 24 (Judicial Conference Committee on Codes of Conduct June 2009).

[40] Rec. Doc. 3 at 3, 12.

[41] *Id.* at 10.

[42] *Id.* at 11–12.

7

that would indicate any conflict or potential conflict because of the Judge's prior representation of any party in this matter, and the Court is unaware of any.

Without explication, Plaintiff relies on *Liljeberg v. Health Services Acquisition Corp.*,[43] in support of the motion. In *Liljeberg*, the Supreme Court noted that "it is critically important in a case of this kind to identify the facts that might reasonably cause an objective observer to question [a judge's] impartiality."[44] The facts in *Liljeberg* are highly distinguishable from the instant matter. There, the trial judge was "a member of the Board of Trustees of Loyola University while [the defendant] was negotiating with Loyola to purchase a parcel of land on which to construct a hospital."[45] Further, "[t]he success and benefit to Loyola of these negotiations turned, in large part, on [the defendant] prevailing in the litigation."[46] The Supreme Court "found an ample basis in the record for concluding that an objective observer would have questioned [the trial judge's] impartiality."[47] Accordingly, the Supreme Court held that a violation of Section 455(a) had occurred "even though [the trial judge's] failure to disqualify himself was the product of a temporary lapse of memory."[48] The Supreme Court further held that vacatur of the trial court's judgment was the appropriate remedy for the trial judge's failure to disqualify himself, based on the circumstances at issue in that case.[49]

---

[43] 486 U.S. at 847.

[44] *Id.* at 865.

[45] *Id.* at 850.

[46] *Id.*

[47] *Id.* at 862.

[48] *Id.*

[49] *Id.* at 869.

In *Liteky v. United States*, the Supreme Court applied the common-law doctrine known as the "extrajudicial source" rule to Section 455(a).[50] The Court defined an "extrajudicial source" as "a source outside the judicial proceeding at hand."[51] The Court clarified that "neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias."[52] If there is no extrajudicial source, recusal is required if a judge displays "deep-seated favoritism or antagonism that would make fair judgment impossible."[53]

In the instant matter, the Court did not represent the City of New Orleans when the complained of ordinances were enacted or enforced. Additionally, the Court has no extrajudicial knowledge relevant to any of the allegations contained in Plaintiff's First Amended Complaint, and otherwise has no interest in the outcome of the litigation. The Court harbors absolutely no favoritism or antagonism that would make fair judgment impossible. Plaintiff has not identified anything about the Court's previous work as City Attorney that would make a reasonable and objective person, knowing all of the facts, harbor doubts concerning the Court's impartiality in its adjudication of this case. Therefore, the Court does not find any facts or circumstances warranting recusal.

Accordingly,

---

[50] 510 U.S. 540, 554 (1994).

[51] *Id.* at 545.

[52] *Id.* at 554–55.

[53] *Id.* at 555.

**IT IS HEREBY ORDERED** that Plaintiff's "Unopposed Motion to Recuse"[54] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this 20th day of August, 2019.

                                                      *Nannette Jolivette Brown*
                                                    **NANNETTE JOLIVETTE BROWN**
                                                    **CHIEF JUDGE**
                                                  **UNITED STATES DISTRICT COURT**

---

[54] Rec. Doc. 9.