**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DAWN ADAMS WHEELAHAN** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 19-11720** |
| **THE CITY OF NEW ORLEANS** | **SECTION: "G"(2)** |

## ORDER AND REASONS

In this litigation, Plaintiff Dawn Adams Wheelahan ("Plaintiff") brings claims under 42 U.S.C. § 1983 and seeks declaratory and injunctive relief against Defendant the City of New Orleans (the "City") for alleged violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.[1] Before the Court is the City's "Motion to Dismiss for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1) and for Failure to State a Claim upon which Relief can be Granted under Fed. R. Civ. P. 12(b)(6)."[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part, denies the motion in part, and grants Plaintiff leave to amend the Complaint to address the deficiencies noted herein.

## I. Background

On July 17, 2019, Plaintiff filed a Complaint in this Court against the City of New Orleans (the "City").[3] Also on July 17, 2019, Plaintiff filed an Amended Complaint.[4] In the Amended

---

[1] Rec. Doc. 3.

[2] Rec. Doc. 13.

[3] Rec. Doc. 1.

[4] Rec. Doc. 3.

Complaint, Plaintiff alleges that she owns a large double house in the Uptown neighborhood of New Orleans, Louisiana.[5] Plaintiff alleges that she lives in one half of the house, and uses the other half to host family members, friends, or renters.[6]

Plaintiff states that in December 2016, the City Council adopted a series of ordinances amending the City's Comprehensive Zoning Ordinances and the City Code to authorize, define, and regulate various categories of "short term rentals," which went into effect on April 1, 2017.[7] Plaintiff alleges that the Comprehensive Zoning Ordinances establish sub-categories of short term rentals including "Accessory Short Term Rentals" and "Temporary Short Term Rentals."[8] Plaintiff further alleges that on May 24, 2018, the City Council enacted another amendment to the Comprehensive Zoning Ordinances establishing an Interim Zoning District, prohibiting "Temporary Short Term Rentals" within the Interim Zoning District, and allowing "Accessory Short Term Rental" licenses only for primary residences whose residents have a homestead exemption.[9]

According to the Amended Complaint, in February 2018, Plaintiff obtained a license from the City, which authorized short term rentals for half of her home under the category of "Temporary Short Term Rental."[10]  Plaintiff alleges that in August 2018 the City's Department of Safety and Permits (the "Department") inspected Plaintiff's rental home.[11] Plaintiff further alleges

---

[5] *Id.* at 4.

[6] *Id.* at 5.

[7] *Id.* at 6.

[8] *Id.*

[9] *Id.* at 12.

[10] *Id.* at 8.

[11] *Id.* at 9.

that following the inspection she was notified by the Department that it had issued her an "Accessory Short Term Rental" license.[12]

According to the Amended Complaint, on April 24, 2019, the Department posted a notice on Plaintiff's door stating that the property was not in compliance with City ordinances because: (1) it was not licensed as a short term rental; (2) the license was not displayed on the front of the house; (3) a valid license number was not included in Plaintiff's online advertising; (4) certain information was not posted inside the house as required by the ordinances; and (5) "the short term rental shall not adversely affected [sic] the residential character of the neighborhood."[13]

Plaintiff alleges that she appeared before the Department on several occasions between April and June 2019 to request renewal of the license, but each time she was told that the license could not be renewed.[14] Plaintiff further alleges that on June 14, 2019, the City issued a Notice of Hearing commanding Plaintiff to appear at a hearing on July 17, 2019 for allegedly violating the City ordinances in the following ways: (1) "not having a license;" (2) "not displaying the license on the front facade of the house;" (3) "not including the license number in her listing advertising the house;" and (4) "use of the rental for commercial or social events."[15] Following the hearing, Plaintiff alleges that "the hearing officer employed by the City assessed thousands of dollars of fines against Plaintiff, and other penalties, including refusal to grant her any future short term rental license, without review by a neutral authority."[16]

---

[12] *Id.*

[13] *Id.* at 10.

[14] *Id.* at 10–11.

[15] *Id.* at 11–12.

[16] *Id.* at 18.

Plaintiff raises the following seven causes of action against the City: (1) the penalties authorized by the Short Term Rental ("STR") Ordinances effect a taking of Plaintiff's property without compensation in violation of the Fifth Amendment; (2) the penalties authorized by the STR Ordinances are unconstitutionally excessive in violation of the Eighth Amendment; (3) the STR Ordinances prohibit Plaintiff from truthfully advertising and describing her private residential property on the internet and are a prior restraint of speech in violation of the First Amendment; (4) the STR Ordinances pertaining to Plaintiff's speech on the internet are a content-based restriction that infringe on Plaintiff's right to free expression in violation of the First Amendment; (5) the STR Ordinances require disclosures of non-public information without subpoena, without probable cause, and without pre-compliance review by a neutral authority in violation of the Fourth Amendment; (6) the STR Ordinances deny Plaintiff the rights to rent and advertise her residential property that the ordinances afford to other, similarly situated homeowners in violation of the equal protection clause of the Fourteenth Amendment; and (7) the STR Ordinances deny Plaintiff the rights afforded to similarly situated homeowners, assess fines and penalties against Plaintiff without pre-compliance review, without review by a neutral fact finder, without any compelling state interest, and therefore, without due process, in violation of the Fourteenth Amendment.[17]

Plaintiff seeks injunctive relief barring the City from enforcing the ordinances to "short term rentals," a declaratory judgment that the City's actions are unconstitutional, and reasonable attorney's fees, expenses, and costs.[18]

On August 21, 2019, the City filed the instant "Motion to Dismiss for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1) and for Failure to State a Claim upon which

---

[17] *Id.* at 13–18.

[18] *Id.* at 18–19.

Relief can be Granted under Fed. R. Civ. P. 12(b)(1)."[19] On September 3, 2019, Plaintiff filed an opposition to the motion.[20]

## II. Parties' Arguments

### A.  *The City's Arguments in Support of the Motion*

The City raises three principal arguments in support of the motion to dismiss.[21] First, the City moves to dismiss Plaintiff's Fifth Amendment takings claim for lack of subject matter jurisdiction because the City asserts the penalties for violations of the STR Ordinances do not constitute an unlawful taking.[22] Second, the City moves to dismiss Plaintiff's other claims for failure to state a claim upon which relief may be granted because the City contends Plaintiff has failed to assert with sufficient particularity how the STR Ordinances have violated her constitutional rights.[23] Third, to the extent Plaintiff seeks injunctive relief barring the City from enforcing the STR Ordinances in effect at the time of the administrative judgment on July 17, 2019, the City asserts those claims are now moot because the City Council recently voted to amend the STR Ordinances, effective December 2019.[24]

### 1.  The City Argues Plaintiff's Takings Claim Should be Dismissed for Lack of Subject Matter Jurisdiction

First, the City asserts that this Court lacks subject matter jurisdiction over Plaintiff's takings claim because the City's threat to impose civil penalties for violations of City Code § 26-

---

[19] Rec. Doc. 13.

[20] Rec. Doc. 15.

[21] Rec. Doc. 13-1.

[22] *Id.* at 1, 3.

[23] *Id.* at 1, 3.

[24] *Id.* at 1–2.

618 does not constitute a Fifth Amendment claim for taking of Plaintiff's property without just compensation.[25] The City contends that in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City* the Supreme Court adopted a two-prong test for ripeness under the Fifth Amendment's Takings Clause, explaining that such claims are not ripe until: (1) the administrative body has reached a final decision and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides.[26] The City asserts that although the Supreme Court recently overruled the requirement of the second prong in *Knick v. Township of Scott, Pennsylvania*, the first prong remains.[27]

The City asserts that the City's Home Rule Charter, Louisiana state statutes, and the Comprehensive Zoning Ordinance authorize the City to impose penalties for violations of their ordinances.[28] Additionally, the City notes that Plaintiff does not allege that the City actually took possession of her property without just compensation because a "threat" does not constitute an actual taking of property without just compensation.[29] Accordingly, the City argues that Plaintiff's takings claim should be dismissed for lack of subject matter jurisdiction.[30]

### 2. The City Argues Plaintiff's Other Claims Should be Dismissed for Failure to State a Claim Upon Which Relief can be Granted

Second, the City moves to dismiss Plaintiff's Eighth Amendment, First Amendment, Fourth Amendment, and Fourteenth Amendment claims for failure to state a claim upon which

---

[25] *Id.* at 5.

[26] *Id.* (citing 473 U.S. 172 (1985)).

[27] *Id.* at 5–6 (citing —— U.S. ——, 139 S.Ct. 2162, 2169 (2019)).

[28] *Id.* at 6.

[29] *Id.* at 6–7.

[30] *Id.* at 7.

relief may be granted because the City contends Plaintiff has failed to assert with sufficient particularity how the STR Ordinances have violated her constitutional rights.[31]

      *a.*     *Eighth Amendment Claim*

As to Plaintiff's Eighth Amendment claim, the City argues that Plaintiff has failed to allege with particularity how the penalties for violating the STR Ordinances are not assessed by a neutral hearing officer or how the fines are excessive.[32] The City contends that the Louisiana Supreme Court has held that the power to enact and enforce zoning and building laws plainly falls within the City's home rule power to initiate legislation and regulation.[33] The City asserts that the penalties do not exceed the limits authorized by Louisiana Revised Statute § 13:2575.[34] Additionally, the City notes that pursuant to Comprehensive Zoning Ordinance, Art. 1, Sec. 1.6.B, the owner of premises where a violation of any provision of the regulations occurs may be found guilty of a misdemeanor punishable either by a fine, or not more than 150 days imprisonment, or both.[35] Here, Plaintiff acknowledges that she only received monetary fines as a result of the violation of the STR Ordinances.[36] The City contends that these fines are not excessive under the

---

[31] *Id.* at 1, 3.

[32] *Id.* at 7.

[33] *Id.* at 8–9 (citing *City of New Orleans v. Bd. of Comm'rs of Orleans Levee Dist.*, 93-0690 (La. 7/5/94); 640 So. 2d 237, 245).

[34] *Id.* at 7, 9–10.

[35] *Id.* at 10.

[36] *Id.*

Eighth Amendment because the fines do not exceed the statutory limits.[37] Accordingly, the City argues that Plaintiff's Eighth Amendment claim should be dismissed.[38]

       *b.*      *First Amendment Claim*

Regarding Plaintiff's First Amendment claim, the City notes that the Supreme Court recognizes a distinct difference between prior restraints and subsequent punishments.[39] Because there is no legal impediment to Plaintiff's ability to engage in any expressive activity, the City argues that there is no First Amendment violation.[40] Further, the City contends that the STR Ordinances do not prevent Plaintiff from truthful expression of a description of her home.[41] The City asserts that Plaintiff's acknowledgements indicate that she remains in willful violation of the STR Ordinances.[42] Accordingly, the City argues that Plaintiff's First Amendment claim should be dismissed for failure to state a claim upon relief can be granted pursuant.[43]

       *c.*      *Fourth Amendment Claim*

As to Plaintiff's Fourth Amendment claim, the City contends that Plaintiff's assertion that the STR Ordinances require disclosures without a subpoena is a misrepresentation.[44] The City cites City Code § 26-620(b), which provides that "[t]he city shall have the authority to subpoena

---

[37] *Id.* at 7, 9–10.

[38] *Id.* at 11.

[39] *Id.* (citing *Alexander v. United States*, 509 U.S. 544 (1993)).

[40] *Id.*

[41] *Id.* at 12–13.

[42] *Id.*

[43] *Id.* at 13.

[44] *Id.*

information from short term rental hosting platforms."[45] The City notes that City Code § 26-620(b) requires that a subpoena be issued and notice given to the internet hosting platform and the homeowner, prior to the return of the requested information.[46] Further, the City Code provides for pre-compliance review before a neutral decisionmaker.[47] Therefore, the City argues that the STR Ordinances do not violate the Plaintiff's Fourth Amendment constitutional rights against unreasonable search and seizure.[48]

    *d.*    *Fourteenth Amendment Claim*

Regarding Plaintiff's Fourteenth Amendment claims, the City asserts that Plaintiff failed to articulate with particularity how the STR Ordinances deny Plaintiff the rights to rent and advertise her residential property, as afforded to other similarly situated homeowners.[49] The City argues that Plaintiff's property has not been treated differently from other similarly situated properties in its zoning classification, as all residential properties are subject to the City's short term rental ordinances.[50] Thus, the City contends that the STR Ordinances do not violate the Fourteenth Amendment because Plaintiff was afforded equal protection and due process.[51]

**3.    The City Argues Plaintiff's Request for Injunctive Relief is Moot**

Finally, to the extent Plaintiff seeks injunctive relief barring the City from enforcing the STR Ordinances in effect at the time of the administrative judgment on July 17, 2019, the City

---

[45] *Id.* at 14.

[46] *Id.* at 15.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.* at 16.

[51] *Id.*

asserts those claims are now moot because the City Council recently voted to amend the STR Ordinances, effective December 2019.[52]

## B.    *Plaintiff's Arguments in Opposition to the Motion*

Plaintiff raises three principal arguments in opposition to the motion to dismiss.[53] First, Plaintiff asserts that her Fifth Amendment takings claim should not be dismissed for lack of subject matter jurisdiction.[54] Second, Plaintiff contends that the Complaint alleges facts supporting her Eighth Amendment, First Amendment, Fourth Amendment, and Fourteenth Amendment claims with sufficient particularity.[55] Third, Plaintiff argues that her request for injunctive relief is not moot.[56]

### 1.    Plaintiff's Contends that her Takings Claim Should not be Dismissed for Lack of Subject Matter Jurisdiction

Plaintiff asserts that the *Williamson County* case, upon which the City relies, has been overruled in its entirety by the Supreme Court in *Knick v. Township of Scott, Pennsylvania*.[57] Plaintiff contends that the City revoked Plaintiff's STR license without cause, and refused to renew her license without cause, thereby effecting a taking of Plaintiff's license in violation of the Fifth Amendment.[58] Plaintiff also asserts that the City has threatened an imminent taking of her property

---

[52] *Id.* at 1–2.

[53] Rec. Doc. 15.

[54] *Id.* at 10–15.

[55] *Id.* at 16–22.

[56] *Id.* at 9.

[57] *Id.* at 10 (citing *Williamson Cnty.*, 473 U.S. at 172 *overruled by Knick*, 139 S.Ct. at 2169).

[58] *Id.* at 4, 11.

by authorizing imminent discontinuance of electric service to the property, which would leave the property without any viable use.[59]

Plaintiff asserts that the license granted by a municipality comprises a property interest.[60] Plaintiff contends that the Complaint alleges, with particularity, that the City revoked her STR license, replaced it with a different category of license, then declared that license expired and invalid less than a year after the City issued it.[61] Additionally, Plaintiff points to the allegation that the City charged Plaintiff with violations of the STR Ordinances, assessed thousands of dollars of penalties against Plaintiff, and refused to grant Plaintiff another STR license.[62] Therefore, Plaintiff asserts that the Complaint alleges facts supporting her takings, due process, and equal protection claims, and the Court has jurisdiction to decide these claims.[63]

Plaintiff also argues that her claim regarding the threats to cut off electrical service to the property is justiciable and she has standing to redress "the threatened enforcement of an allegedly unconstitutional law."[64] Plaintiff asserts that she has alleged facts establishing the City's past enforcement actions against her, and the credible threat of future enforcement.[65] Plaintiff asserts that the threatened injuries are directly traceable to the City's challenged conduct, and Plaintiff's

---

[59] *Id.*

[60] *Id.* at 11 (citing *Bowlby v. Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012)).

[61] *Id.* at 12.

[62] *Id.*

[63] *Id.*

[64] *Id.* at 13–14 (citing *Morris v. City of New Orleans*, 350 F.Supp.3d 544, 552 (E.D. La. 2019); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)).

[65] *Id.* at 14.

injury will be redressed by a finding that the STR Ordinances are unconstitutional.[66] Therefore, Plaintiff asserts that she has Article III standing to raise this claims.[67]

### 2. Plaintiff Argues that She has Alleged her Other Claims with Sufficient Particularity

#### a. *Eighth Amendment Claim*

Plaintiff asserts that she has alleged all of the facts that form the basis of her Eighth Amendment claim with sufficient particularity.[68] Plaintiff notes that the City does not point to any statute authorizing the City to cut off electric service to Plaintiff's residence, as the City allegedly threatened to do.[69] Moreover, even if there were such a statute, Plaintiff contends that the City points to nothing that would insulate a state statute authorizing such a penalty from a finding of unconstitutionality because such a penalty is disproportionate to the STR Ordinance violations charged.[70] Plaintiff cites *Timbs v. Indiana*, a recent decision by the United States Supreme Court, holding that the Eighth Amendment's excessive fines clause is an incorporated protection applicable against the States under the Fourteenth Amendment.[71] Therefore, Plaintiff asserts that this Court has the power to overrule state and municipal laws authorizing fines that are disproportionate to the violations they punish, in violation of the Eighth Amendment.[72] Accordingly, because the Complaint alleges facts to support a claim under the Eighth Amendment,

---

[66] *Id.*

[67] *Id.*

[68] *Id.* at 16.

[69] *Id.*

[70] *Id.* at 16–17.

[71] *Id.* at 17 (citing —— U.S. ——, 139 S.Ct. 682, 686 (2019)).

[72] *Id.*

Plaintiff asserts that the motion to dismiss should be denied and the issue of "[w]hether the City's enforcement ordinances meet constitutional muster under the Supreme Court's proportionality standard established in *Timbs* is a different question, for another day."[73]

    b.  *First Amendment Claim*

   Next, Plaintiff asserts that the plain language of the STR Ordinances shows that the ordinances comprise prior restraints and content-based restrictions of Plaintiff's speech.[74] Plaintiff contends that the City points to no compelling governmental interest that these restrictions serve, and the City does not show that the ordinances are narrowly tailored to serve that interest, even if there was one.[75] Plaintiff also contends that the STR Ordinances require Plaintiff to post information that she does not wish to post, which she asserts comprises compelled speech.[76] According to Plaintiff, the City's conclusory statement that the STR Ordinances do not restrict Plaintiff's ability to engage in any expressive activity is inadequate to support dismissal of the First Amendment claim.[77] Plaintiff asserts that the Complaint contains ample factual allegations

---

[73] *Id.* at 18.

[74] *Id.*

[75] *Id.*

[76] *Id.* at 19.

[77] *Id.*

to show that she has been subjected to both a prior restraint and a subsequent punishment, and the motion to dismiss should therefore be denied.[78]

### c.    Fourth Amendment Claim

Plaintiff argues that she has alleged ample facts to support her Fourth Amendment claim.[79] Plaintiff cites City Code § 26-620, which provides that online short-term rental platforms must provide, on a monthly basis, "(2) the total number of nights that each listing on the platform was rented to guests during the applicable listing period; (3) a cumulative tally to date of the number of nights that each listing on the platform is booked for rental during the remaining months of the applicable calendar year."[80] Plaintiff asserts that a district court in the Southern District of New York, considering a similar municipal ordinance, granted a preliminary injunction against enforcement, finding that "compelled production from home-sharing platforms of user records is an event that implicates the Fourth Amendment."[81] Plaintiff asserts that the STR Ordinances provide no opportunity for pre-compliance review, and she argues that recent Fifth Circuit precedent indicates that "hearings before the City's own STR administrative agency does not comprise review before a neutral decisionmaker."[82]

### d.    Fourteenth Amendment Claim

Plaintiff contends that the following allegations in the Complaint support her equal protection and due process claims: (1) the City demanded to inspect her house without probable

---

[78] *Id.*

[79] *Id.* at 20.

[80] *Id.*

[81] *Id.* (citing *Airbnb v. City of New York*, 18 Civ. 7712, Dkt 92, p. 20 (S.D.N.Y. 2019)).

[82] *Id.* at 21 (citing *Cain v. White,* 937 F.3d 446 (5th Cir. 2019).

cause to believe that a violation had occurred; (2) the City revoked her license without cause; (3) the City declared her subsequently-issued license expired less than a year after the City issued it; and (4) the City refused to issue Plaintiff another STR license.[83] According to Plaintiff, the City "held an administrative hearing—presided-over by its own employee—who assessed thousands of dollars of fines against Plaintiff, which Plaintiff was required to pay in order to appeal suspensively."[84] Unless the City does the same to other similarly-situated license holders, Plaintiff asserts that these factual allegations are sufficient to show equal protection as well as due process violations.[85]

### 3.    Plaintiff Argues her Request for Injunctive Relief is not Moot

Finally, Plaintiff contends that her request for injunctive relief is not moot because the City did not repeal the provisions of the STR Ordinances about which Plaintiff complains.[86] In fact, Plaintiff alleges that the amended STR Ordinances are more constitutionally infirm than before and continue to violate Plaintiff's constitutional rights.[87] Therefore, Plaintiff argues that the request for injunctive relief is not moot.[88]

---

[83] *Id.*

[84] *Id.* at 22.

[85] *Id.*

[86] *Id.* at 9.

[87] *Id.*

[88] *Id.* at 10.

# III. Legal Standard

**A.    *Legal Standard on a Rule 12(b)(1) Motion to Dismiss***

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by the Constitution and statute."[89] Thus, under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[90] In ruling on a Rule 12(b)(1) motion to dismiss, the Court may rely on: (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts.[91] The plaintiff, as the party asserting jurisdiction, has the burden of proving subject matter jurisdiction by a preponderance of the evidence.[92]

"Ripeness is a question of law that implicates this court's subject matter jurisdiction."[93] A motion to dismiss based on ripeness is properly analyzed under Federal Rule of Civil Procedure 12(b)(1).[94] Mootness is also a question that implicates this court's subject matter jurisdiction, and is properly analyzed under Federal Rule of Civil Procedure 12(b)(1).[95]

---

[89] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

[90] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1000 (5th Cir. 1998) (internal citation omitted).

[91] *Den Norske Stats Ojeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). *See also Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

[92] *See Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (internal citations omitted).

[93] *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 292 (5th Cir. 2006) (citing *Williamson Cnty.*, 473 U.S. at 186, 194).

[94] *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012).

[95] *See Deutsch v. Travis Cty. Shoe Hosp., Inc.*, 721 F. App'x 336, 339 (5th Cir. 2018).

### B.    *Legal Standard on a Rule 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[96] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[97] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[98] "Factual allegations must be enough to raise a right to relief above the speculative level."[99] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[100]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[101] Although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[102] "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."[103] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[96] Fed. R. Civ. P. 12(b)(6).

[97] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[98] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[99] *Twombly*, 550 U.S. at 555.

[100] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[101] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[102] *Iqbal*, 556 U.S. at 677–78.

[103] *Id.* at 679.

statements" will not suffice.[104] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[105] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[106] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[107] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[108]

## IV. Analysis

The City raises three principal arguments in support of the motion to dismiss.[109] First, the City moves to dismiss Plaintiff's Fifth Amendment takings claim for lack of subject matter jurisdiction because the City asserts the penalties for violations of the STR Ordinances do not constitute an unlawful taking.[110] Second, the City moves to dismiss Plaintiff's other claims for failure to state a claim upon which relief may be granted because the City contends Plaintiff has failed to assert with sufficient particularity how the STR Ordinances have violated her

---

[104] *Id.* at 678.

[105] *Id.*

[106] *Id.*

[107] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[108] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[109] Rec. Doc. 13-1.

[110] *Id.* at 1, 3.

constitutional rights.[111] Finally, to the extent Plaintiff seeks injunctive relief barring the City from enforcing the STR Ordinances in effect at the time of the administrative judgment on July 17, 2019, the City argues those claims are now moot because the City Council recently voted to amend the STR Ordinances, effective December 2019.[112]

As an initial matter, the Court addresses the City's argument that Plaintiff's request for injunctive relief is moot because this issue will guide the rest of the analysis of Plaintiff's claims. The City argues that Plaintiff's request for injunctive relief is moot because the STR Ordinances were amended effective December 2019.[113] In opposition, Plaintiff contends that her request for injunctive relief is not moot because the City did not repeal the provisions of the STR Ordinances about which Plaintiff complains.[114]

Article III, section 2 of the Constitution confines federal courts to the decision of "cases" or "controversies."[115] "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."[116] "[S]tatutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'"[117] A case is moot when "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief

---

[111] *Id.*

[112] *Id.* at 1–2.

[113] *Id.*

[114] Rec. Doc. 15 at 9.

[115] U.S. CONST. art. III, § 2.

[116] *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

[117] *Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 564 (5th Cir. 2006) (quoting *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000)).

or events have completely and irrevocably eradicated the effects of the alleged violation."[118] With this framework in mind, the Court will consider whether Plaintiff's claims are moot in light of the Amended STR Ordinances.

## A.    *Whether the Court has Subject Matter Jurisdiction over Plaintiff's Takings Claim*

First, the City asserts that this Court lacks subject matter jurisdiction over Plaintiff's takings claim because the City's threat to impose civil penalties for violations of City Code § 26-618 does not constitute a Fifth Amendment claim for taking of Plaintiff's property without just compensation.[119] The City contends that in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, the Supreme Court adopted a two-prong test for ripeness under the Fifth Amendments Takings Clause.[120] The City asserts that although the Supreme Court recently overruled the requirement of the second prong in *Knick v. Township of Scott, Pennsylvania*, the first prong, which requires the administrative body to have reached a final decision, remains.[121] The City asserts that the City's Home Rule Charter, Louisiana State statutes, and the Comprehensive Zoning Ordinance authorize the City to impose penalties for violations of their ordinances.[122] Additionally, the City notes that Plaintiff does not allege that the City actually

---

[118] *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks and citations omitted).

[119] Rec. Doc. 13-1 at 5.

[120] *Id.* (citing 473 U.S. 172 (1985)).

[121] *Id.* at 5–6 (citing ⸻ U.S. ⸻, 139 S.Ct. 2162, 2169 (2019)).

[122] *Id.* at 6.

took possession of her property without just compensation because a "threat" does not constitute an actual taking of property without just compensation.[123]

In opposition, Plaintiff asserts that the *Williamson County* case, upon which the City relies, has been overruled in its entirety by the Supreme Court in *Knick v. Township of Scott, Pennsylvania*.[124] Plaintiff contends that the City revoked Plaintiff's STR license without cause, and refused to renew her license without cause, thereby effecting a taking of Plaintiff's license in violation of the Fifth Amendment.[125] Plaintiff also asserts that the City has threatened an imminent taking of her property by authorizing imminent discontinuance of electric service to the property, which would leave the property without any viable use.[126]

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." The Fifth Amendment's prohibition on takings without just compensation is applicable against the states through the Fourteenth Amendment.[127] In *Williamson County*, the Supreme Court established a two-prong test for evaluating ripeness under the Takings Clause.[128] Under this test, a takings claim is not ripe until: "(1) the relevant governmental unit has reached a final decision as to how the regulation will be applied to the landowner, and (2) the plaintiff has sought compensation for the alleged taking through whatever

---

[123] *Id.* at 6–7.

[124] Rec. Doc. 15 at 10 (citing *Williamson Cnty.*, 473 U.S. at 172; *Knick*, 139 S.Ct. at 2169).

[125] *Id.* at 4, 11.

[126] *Id.*

[127] *Williamson Cnty.*, 473 U.S. at 175, n.1 (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 241, (1897); *San Diego Gas & Electric Co. v. San Diego*, 450 U.S. 621, 623, n. 1 (1981)).

[128] *Id.* at 186, 194.

adequate procedures the state provides."[129] "Ripeness is a question of law that implicates this court's subject matter jurisdiction."[130]

Recently, the Supreme Court again had occasion to address whether a plaintiff who brings a claim under the Takings Clause of the Fifth Amendment must first seek just compensation under state law before bringing a claim under the Takings Clause in federal court.[131] In *Knick*, the Supreme Court overruled *Williamson County*, holding that "the property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under § 1983 at that time."[132] The Court reasoned that "[t]he Fifth Amendment right to full compensation arises at the time of the taking, regardless of [the state] post-taking remedies that may be available to the property owner."[133]

Following *Knick*, the United States Court of Appeals for the Second Circuit recognized that although *Knick* eliminated the state-exhaustion requirement it "leaves undisturbed the first prong, that a state regulatory agency must render a final decision on a matter before a taking claim can proceed."[134] Although the Fifth Circuit has not yet addressed this issue, in *Knick* the Supreme Court stated that "*Knick* does not question the validity of th[e] finality requirement, which is not at issue here."[135] Accordingly, a Takings Clause claim is ripe for judicial review when the

---

[129] *Urban Developers LLC*, 468 F.3d at 292 (citing *Williamson Cnty.*, 473 U.S. at 186, 194).

[130] *Id.*

[131] *See Knick*, 139 S.Ct. at 2167.

[132] *Id.* at 2168.

[133] *Id.* at 2170.

[134] *Sagaponack Realty, LLC v. Vill. of Sagaponack*, 778 F. App'x 63, 64 (2d Cir. 2019).

[135] *See Knick*, 139 S.Ct. at 2169.

governmental unit has reached a final decision as to how the regulation will be applied to the landowner.

In *Urban Developers LLC v. City of Jackson, Mississippi*, the Fifth Circuit analyzed the finality requirement, finding that a threat to use the city's legal powers "does not constitute a taking, since a non-regulatory taking requires actual government confiscation or physical occupation."[136] In the Amended Complaint, Plaintiff alleges that the City threatens to impose penalties authorized by the STR Ordinances, including "discontinuance of electric service to Plaintiff's home, and placing liens on her property."[137] Plaintiff alleges that these threatened penalties "effect a taking of Plaintiff's property without compensation, and without due process, in violation of the Fifth and Fourteenth Amendments."[138] Plaintiff's claim that the City threatened to discontinue electric service to Plaintiff's home and place liens on her property is not ripe for judicial review because any decision to take the property is not final. Accordingly, this claim is dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).

In opposition to the instant motion to dismiss, Plaintiff also argues that the City revoked Plaintiff's STR license without cause, and refused to renew her license without cause, thereby effecting a taking of Plaintiff's license in violation of the Fifth Amendment.[139] Plaintiff did not raise this claim in the Amended Complaint.[140] A new claim cannot be raised in opposition to a

---

[136] *Urban Developers*, 468 F.3d at 294 (internal citations omitted).

[137] Rec. Doc. 3 at 13.

[138] *Id.*

[139] Rec. Doc. 15 at 4, 11.

[140] *See* Rec. Doc. 3 at 13–14.

motion to dismiss.[141] However, the Fifth Circuit has held that "[g]enerally, a new claim or legal theory raised in response to a dispositive motion should be construed as a request for leave to amend the complaint, and the district court should determine whether leave should be granted."[142]

As discussed *infra*, the holder of a privilege or license may be entitled to certain procedural due process protections, but to prevail on a takings claim a plaintiff must establish the taking of a constitutionally protected property interest.[143] The STR license is a privilege, not a right.[144] Therefore, to the extent Plaintiff is requesting leave of Court to amend the Complaint to allege a takings claim regarding the "taking" of her STR license, the Court denies Plaintiff's request to amend.

**B.      *Whether Plaintiff's Other Claims Should be Dismissed for Failure to State a Claim Upon Which Relief can be Granted***

The City moves to dismiss Plaintiff's Eighth Amendment, First Amendment, Fourth Amendment, and Fourteenth Amendment claims for failure to state a claim upon which relief may be granted because the City contends that Plaintiff has failed to assert with sufficient particularity

---

[141] *See Payne v. Hammond City*, No. 15-1022, 2017 WL 1164343 (E.D. La. Mar. 29, 2017) (Brown, J.).

[142] *Pierce v. Hearne Ind. Sch. Dist.*, 600 F. App'x. 194, 200 (5th Cir. 2015) (citing *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n. 2 (5th Cir. 2008)).

[143] *See Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 272–73, n.7 (5th Cir. 2012). *See also Maloney Gaming Mgmt., L.L.C. v. St. Tammany Parish*, 456 F. App'x 336, 341 (5th Cir. 2011).

[144] *See* New Orleans City Code § 26-615(c) ("The permits required by this article are regulated privileges, not rights, and can be revoked or suspended by the city in accordance with the provisions provided herein.").

how the STR Ordinances have violated her constitutional rights.[145] The Court addresses each of these claims in turn.

### 1.    Eighth Amendment Claim

As to Plaintiff's Eighth Amendment claim, the City argues that Plaintiff has failed to allege with particularity how the penalties for violating the STR Ordinances are excessive and not assessed by a neutral hearing officer.[146] The City contends that the monetary fines imposed on Plaintiff are not excessive under the Eighth Amendment because the fines do not exceed the statutory limits.[147]

In opposition, Plaintiff asserts that she has alleged all of the facts that form the basis of her Eighth Amendment claim with sufficient particularity.[148] Plaintiff notes that the City does not point to any statute authorizing the City to cut off electric service to Plaintiff's residence, as the City allegedly threatened to do.[149] Moreover, even if there were such a statute, Plaintiff contends that the City points to nothing that would insulate a state statute authorizing such a penalty from a finding of unconstitutionality because such a penalty is disproportionate to the STR Ordinance violations charged.[150]

The Excessive Fines Clause of the Eighth Amendment prohibits the imposition of excessive fines by the government.[151] Recently, the United States Supreme Court incorporated the

---

[145] Rec. Doc. 13-1 at 1, 3.

[146] *Id.* at 7.

[147] *Id.* at 7, 9–10.

[148] Rec. Doc. 15 at 16.

[149] *Id.*

[150] *Id.* at 16–17.

[151] U.S. Const. amend. VIII.

Excessive Fines Clause against the states through the Due Process Clause of the Fourteenth Amendment.[152] "[W]hen a Bill of Rights protection is incorporated, the protection applies 'identically to both the Federal Government and the States.'"[153]

The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'"[154] The applicability of the Excessive Fines Clause does not depend on whether the fine is civil or criminal in nature, but "whether it is punishment."[155] If a civil sanction "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes," it is a punishment.[156] In the excessive-fines context, a fine may constitute punishment when, for example, it does not serve a remedial purpose such as replacing revenue lost by the government.[157]

As the Supreme Court has explained, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish."[158] "If the amount of [fine] is grossly disproportional to the gravity of the [] offense, it is unconstitutional."[159] The Fifth Circuit has found that "[a]n administrative agency's fine does not violate the Eighth Amendment—

---

[152] *Timbs v. Indiana*, ––– U.S. –––, 139 S.Ct. 682, 686–87 (2019).

[153] *Id.* at 689–90 (quoting *McDonald v. Chicago*, 561 U.S. 742, 767 (2010)).

[154] *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (quoting *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)).

[155] *Id.* at 610.

[156] *Id.* (quoting *United States v. Halper*, 490 U.S. 435, 448 (1989)).

[157] *United States v. Bajakajian*, 524 U.S. 321, 342 (1998).

[158] *Id.* at 334.

[159] *Id.* at 337.

no matter how excessive the fine may appear—if it does not exceed the limits prescribed by the statute authorizing it."[160] Therefore, to state an excessive fine claim under the Eighth Amendment, Plaintiff must plead facts showing that: (1) the fine was punitive in nature and (2) the fine was disproportionate to the gravity of the offense.

In the Amended Complaint, Plaintiff alleges that "[t]he monetary fines compound daily, uncapped, and are disproportionate to the inconsequential violations that they punish."[161] Plaintiff further alleges that "[t]he penalties authorizing discontinuance of electric service to Plaintiff's property, in New Orleans's tropical climate, threaten damage and destruction to Plaintiff's property disproportionate to the inconsequential violations they punish."[162]

Drawing a reasonable inference in Plaintiff's favor, Plaintiff has alleged that the size of the fine suggests at least some element of deterrence or retribution and therefore may be considered a punishment. Additionally, Plaintiff pleads facts suggesting that the amount of the fine is "grossly disproportionate" to the gravity of the violation. Consideration of the proportionality of a fine "requires a fact-specific evaluation of all the circumstances."[163] Based on the limited record currently before the Court, the Court cannot even determine what fines were imposed on Plaintiff. Accordingly, accepting the allegations in the Complaint as true, the Court finds that Plaintiff has

---

[160] *Cripps v. Louisiana Dep't of Agric. & Forestry*, 819 F.3d 221, 234 (5th Cir. 2016) (citing *Newell Recycling Co. v. E.P.A.*, 231 F.3d 204, 210 (5th Cir. 2000)).

[161] Rec. Doc. 3 at 14.

[162] *Id.*

[163] *United States v. Bieri*, 21 F.3d 819, 824 (8th Cir. 1994). *See also Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995) ("[W]ithout the facts of a particular violation, we cannot decide whether a specific fine will be excessive or punishment so cruel and unusual as to violate the Eighth Amendment.").

stated an excessive-fines claim against the City, and the Court will not reach the fact-specific proportionality evaluation at the motion to dismiss stage.

### 2.  First Amendment Claim

Regarding Plaintiff's First Amendment claim, the City notes that the Supreme Court recognizes a distinct difference between prior restraints and subsequent punishments.[164] Because there is no legal impediment to Plaintiff's ability to engage in any expressive activity, the City argues that there is no First Amendment violation.[165] Further, the City contends that the ordinances do not prevent Plaintiff from truthful expression of a description of her home.[166] In opposition, Plaintiff asserts that the plain language of the STR Ordinances shows that the ordinances comprise content-based restrictions and prior restraints on Plaintiff's speech.[167]

#### a.  Constitutionally Protected Speech

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech."[168] As a preliminary matter, the Court must determine whether the STR Ordinances infringe speech within the scope of the First Amendment. Neither party addresses this issue. Nevertheless, it appears that Plaintiff is alleging that the STR Ordinances infringe on constitutionally protected commercial speech.

The Supreme Court has "recognized the commonsense distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government

---

[164] Rec. Doc. 13-1 at 11 (citing *Alexander v. United States*, 509 U.S. 544 (1993)).

[165] *Id.*

[166] *Id.* at 12–13.

[167] Rec. Doc. 15 at 18.

[168] U.S. Const. amend. I.

regulation, and other varieties of speech."[169] The Constitution "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation."[170]

Advertising is at the heart of commercial speech.[171] Plaintiff argues that the STR Ordinances: (1) prohibit Plaintiff from advertising her house on the internet without a license from the City and without prior review and compliance with the City's terms; (2) prohibit Plaintiff from accurately describing her house on an internet platform by limiting the number of bedrooms she may advertise, and requiring her to advertise that the house can only accommodate two guests in each bedroom, regardless of the size of the bedrooms and the furnishings they contain; (3) prohibit plaintiff from advertising that her guests may have a private party, a family dinner, or any other "social event" at her house; and (4) require Plaintiff to publish an STR license number on the internet and on the front of her house.[172] Therefore, it appears that Plaintiff is alleging that the STR Ordinances infringe on constitutionally protected commercial speech.

---

[169] *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 577, 562 (1980) (internal citations omitted).

[170] *Id.* at 562–63.

[171] *Id.* at 563 ("The First Amendment's concern for commercial speech is based on the informational function of advertising."); *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995) ("It is now well established that lawyer advertising is commercial speech and, as such, is accorded a measure of First Amendment protection."); *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 69 (1983) ("[A]dvertising for contraceptives not only implicates 'substantial individual and societal interests' in the free flow of commercial information, but also relates to activity which is protected from unwarranted state interference.")

[172] Rec. Doc. 15 at 6.

"The party seeking to uphold a restriction on commercial speech carries the burden of justifying" the law.[173] Courts evaluate four factors to determine whether a political subdivision may regulate commercial-speech: (1) whether the speech concerns lawful activity and is not misleading; (2) whether the asserted governmental interest justifying the regulation is substantial; (3) whether the regulation directly advances the governmental interest asserted; and (4) whether the regulation is more extensive than necessary to serve that interest.[174]

Plaintiff has alleged that the STR Ordinances impermissibly infringe on her right to advertise her home on the internet. The City, as the party seeking to uphold the restriction on commercial speech, bears the burden of justifying the law. Because the City does not brief these issues, the Court will not address them *sua sponte* at this time.[175]

> b.     Prior Restraint

Assuming for purposes of this motion that the STR Ordinances regulate constitutionally protected speech, the Court will address the City's argument that the STR Ordinances impose a subsequent punishment, rather than a prior restraint on speech. "Prior restraints typically involve administrative and judicial orders [such as temporary restraining orders and permanent injunctions] forbidding certain communications when issued in advance of the time that such

---

[173] *American Academy of Implant Dentistry v. Parker*, 860 F.3d 300, 306 (5th Cir. 2017) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n.20 (1983)).

[174] *Central Hudson Gas & Elec. Corp.*, 447 U.S. at 566.

[175] At least one court has held that a similar ordinance does not regulate constitutionally protected speech. *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019). The plaintiffs in *HomeAway*, online booking platform, argued "that, even if the plain language of the Ordinance only reaches 'conduct,' *i.e.*, booking unlicensed properties, the law effectively imposes a 'content-based financial burden' on commercial speech and is thus subject to First Amendment scrutiny." *Id.* at 684. The Ninth Circuit rejected that argument finding that "[b]ecause the conduct at issue—completing booking transactions for unlawful rentals—consists only of nonspeech, nonexpressive conduct, we hold that the Ordinance does not implicate the First Amendment." *Id.* at 685. This case is factually distinguishable from *HomeAway* in that Plaintiff here is an individual homeowner alleging that the STR Ordinances prohibit her from advertising her home. Furthermore, the Court does not reach these issues in the instant motion because they were not raised by the City.

communications are to occur[,] or, in other words, laws which require a speaker to obtain prior approval for any expressive activities."[176]

In *Forsyth County, Ga. v. Nationalist Movement*, the Supreme Court found that an ordinance requiring a permit before authorizing public speaking, parades, or assemblies was a prior restraint on speech.[177] The Court stated that "any permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication."[178]

Prior restraints on speech are not unconstitutional per se, but bear "a heavy presumption against its constitutional validity."[179] In *Thomas v. Chicago Park District*, the Supreme Court held that a content-neutral licensing scheme must "contain adequate standards to guide the official's decision and render it subject to effective judicial review."[180] The Court determined that an ordinance, which required a permit before conducting an event involving more than fifty people, passed constitutional muster because a permit could be denied only for reasons specified in the ordinance, the licensing body was required to process applications within 28 days and clearly explain its reasons for any denial, and the grounds for denial were "reasonably specific and objective," such that the decision was not left to the whim of the licensing authority.[181]

---

[176] *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 235 (5th Cir. 2012) (quoting *Alexander*, 509 U.S. at 550–51).

[177] *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992).

[178] *Id.*

[179] *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (internal citations omitted).

[180] *Thomas v. Chicago Park District*, 534 U.S. 316, 323 (2002).

[181] *Id.* at 325.

In the Amended Complaint, Plaintiff alleges that "[t]he City's ordinances prohibiting Plaintiff from truthfully advertising and describing her private residential property on the internet are a prior restraint of speech that is presumptively unconstitutional."[182] Plaintiff argues that the STR Ordinances prohibit Plaintiff from advertising her house on the internet without a license from the City and without prior review and compliance with the City's terms.[183] Plaintiff alleges facts indicating that the STR Ordinances impose a "permitting scheme" that controls the "time, place, and manner of speech" or require the speaker to "obtain prior approval for any expressive activities."[184] Plaintiff has alleged facts to show that the STR Ordinances are a "prior restraint" as opposed to a "subsequent punishment" that "penalize[s] past speech."[185] Accordingly, the Court denies the City's motion to dismiss Plaintiff's First Amendment claim.[186]

### 3.    Fourth Amendment Claim

As to Plaintiff's Fourth Amendment claim, the City contends that Plaintiff's assertion that the STR Ordinances require disclosures without a subpoena is a misrepresentation.[187] The City cites City Code § 26-620(b), which provides that "[t]he city shall have the authority to subpoena information from short term rental hosting platforms."[188] Further, the City notes that the City Code

---

[182] Rec. Doc. 3 at 15.

[183] Rec. Doc. 15 at 6.

[184] *Forsyth County,* 505 U.S. at 126; *Gibson*, 700 F.3d at 235.

[185] *Gibson*, 700 F.3d at 235.

[186] Plaintiff also asserts that the STR Ordinances are a content-based restriction on speech. The City does not address this issue in the instant motion. Accordingly, the Court will not consider it *sua sponte* at this time.

[187] Rec. Doc. 13-1

[188] *Id.* at 14.

provides for pre-compliance review before a neutral decisionmaker.[189] Therefore, the City argues that the STR Ordinances do not violate Plaintiff's Fourth Amendment constitutional rights against unreasonable search and seizure.[190]

In opposition, Plaintiff argues that she has alleged ample facts to support her Fourth Amendment claim.[191] Plaintiff asserts that a district court in the Southern District of New York, considering a similar municipal ordinance, granted a preliminary injunction against enforcement, finding that "compelled production from home-sharing platforms of user records is an event that implicates the Fourth Amendment."[192] Plaintiff asserts that the STR Ordinances provide no opportunity for pre-compliance review, and she argues that recent Fifth Circuit precedent indicates that "hearings before the City's own STR administrative agency does not comprise review before a neutral decisionmaker."[193]

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

---

[189] *Id.*

[190] *Id.*

[191] Rec. Doc. 15 at 20.

[192] *Id.* (citing *Airbnb v. City of New York*, 18 Civ. 7712, Dkt 92, p. 20 (S.D.N.Y. 2019)).

[193] *Id.* at 21 (citing *Cain v. White,* 937 F.3d 446 (5th Cir. 2019)).

particularly describing the place to be searched, and the persons or things to be seized.[194]

The Fourth Amendment is applicable to the States by virtue of its incorporation through the Due Process Clause of the Fourteenth Amendment.[195]

A search or seizure within the Fourth Amendment occurs when the state either "physically occupie[s] private property for the purpose of obtaining information,"[196] or infringes on a constitutionally protected privacy interest to gather information.[197] The Supreme Court has repeatedly held that "'searches conducted outside the judicial process, without prior approval by [a] judge or [a] magistrate [judge], are per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'"[198] One such exception applies to "administrative searches" where the "'primary purpose' of the searches is '[d]istinguishable from the general interest in crime control.'"[199] "The Court has held that absent consent, exigent circumstances, or

---

[194] U.S. Const. amend. IV.

[195] *City of Ontario v. Quon*, 560 U.S. 746, 750 (2010).

[196] *United States v. Jones*, 565 U.S. 400, 404 (2012).

[197] *Katz v. United State*s, 389 U.S. 347, 360–61 (1967) (Harlan, J., concurring); *Byrd v. United State*s, —— U.S. ——, 138 S.Ct. 1518 (2018) ("[M]ore recent Fourth Amendment cases have clarified that the test most often associated with legitimate expectations of privacy, which was derived from the second Justice Harlan's concurrence in *Katz v. United States*, supplements, rather than displaces, the traditional property-based understanding of the Fourth Amendment."); *Carpenter v. United States*, —— U.S. ——, 138 S.Ct. 2206, 2213–14 (2018) ("In *Katz v. United States*, we established that 'the Fourth Amendment protects people, not places,' and expanded our conception of the Amendment to protect certain expectations of privacy as well.").

[198] *City of Los Angeles v. Patel*, —— U.S. ——, 135 S.Ct. 2443, 2448 (2015) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz*, 389 U.S. at 357).

[199] *Id.* (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 44 (2000)).

the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker."[200]

"[T]he ultimate touchstone of the Fourth Amendment is reasonableness."[201] "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order 'to safeguard the privacy and security of individuals against arbitrary invasions . . . .'"[202] The permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."[203]

In *See v. City of Seattle*, the Supreme Court recognized "[i]t is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome."[204] The Court also emphasized the importance of a neutral arbiter.[205] Although an agency may issue a demand for information in the form of an administrative subpoena, the Court held, the demand "may not be made and enforced by the

---

[200] *Id.* (internal citations omitted).

[201] *Riley v. California*, 573 U.S. 373, 381 (2014) (internal citations omitted).

[202] *Delaware v. Prouse*, 440 U.S. 648, 654 (1979) (quoting *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312 (1978) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967)).

[203] *Id.*

[204] *See v. City of Seattle*, 387 U.S. 541, 544 (1967).

[205] *Id.* at 544–45.

inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply."[206]

*City of Los Angeles v. Patel* is the most recent Supreme Court case to consider the administrative search exception.[207] In *Patel*, the Supreme Court considered the constitutionality of a municipal ordinance that required hotel operators to record, maintain, and make available for inspection by the police certain information about guests—including the guest's name and address, the number of people in the guest's party, the length of stay, the rate charged, and the make, model, and license plate number of the guest's vehicle parked on the hotel property.[208] The Supreme Court first clarified that facial challenges under the Fourth Amendment are permissible.[209] The Court opined that "[s]earch regimes where no warrant is ever required may be reasonable where special needs make the warrant and probable-cause requirement impracticable, and where the primary purpose of the searches is distinguishable from the general interest in crime control."[210] However, the Court held that the Los Angeles ordinance was facially invalid under the Fourth Amendment because it lacked a mechanism for pre-compliance review.[211]

Without an opportunity for pre-compliance review, the Court reasoned that "the ordinance creates an intolerable risk that searches authorized by it will exceed statutory limits, or be used as

---

[206] *Id.*

[207] *Patel*, 135 S.Ct. at 2448.

[208] *Id.*

[209] *Id.* at 2449. However, "claims for facial relief under the Fourth Amendment are unlikely to succeed when there is substantial ambiguity as to what conduct a statute authorizes." *Id.* at 2450.

[210] *Id.* at 2452 (internal quotation marks, alterations, and citations omitted).

[211] *Id.* at 2451.

a pretext to harass hotel operators and their guests."[212] The Court emphasized that hotel owners need only be afforded an opportunity for review, and actual review could be reserved for "those rare instances where a hotel operator objects to turning over the registry."[213] The Court found that such searches authorized by the ordinance would be constitutional if they were performed pursuant to an administrative subpoena.[214] The Court reasoned that if an administrative subpoena were issued the hotel operator could move to quash such a subpoena before the records sought were searched; and "a neutral decisionmaker, including an administrative law judge, would then review the subpoenaed party's objection before deciding whether the subpoena is enforceable."[215]

Here, Plaintiff challenges the monthly reporting requirements that were imposed on short-term rental platforms under City Code § 26-620 when it was enacted in 2016. However, the 2019 amendments to the STR Ordinances appear to have removed these requirements. In this action, Plaintiff seeks only declaratory and injunctive relief.[216] She does not request monetary damages for any alleged prior violations of her Fourth Amendment rights. Accordingly, Plaintiff's Fourth Amendment claim appears to be moot. Nevertheless, short of dismissing the Fourth Amendment

---

[212] *Id.* at 2452–53.

[213] *Id.* at 2453.

[214] *Id.*

[215] *Id.*

[216] Rec. Doc. 3 at 18.

claim, the Court will grant Plaintiff leave to amend the complaint to allege a Fourth Amendment claim under the Amended STR Ordinances, if possible.

### 4. Fourteenth Amendment Claim

Regarding Plaintiff's Fourteenth Amendment claims, the City asserts that Plaintiff failed to articulate with particularity how the STR Ordinances deny Plaintiff the rights to rent and advertise her residential property, as afforded to other similarly situated homeowners.[217] The City argues that Plaintiff's property has not been treated differently from other similarly situated properties in its zoning classification, as all residential property is subject to the City's short term rental ordinances.[218] Thus, the City contends the STR Ordinances do not violate the Fourteenth Amendment because Plaintiff was afforded equal protection and due process.[219]

Plaintiff contends that the following allegations in the Complaint support her equal protection and due process claims: (1) the City demanded to inspect her house without probable cause to believe that a violation had occurred; (2) the City revoked her license without cause; (3) the City declared her subsequently-issued license expired less than a year after the City issued it; and (4) the City refused to issue Plaintiff another STR license.[220] According to Plaintiff, the City "held an administrative hearing—presided-over by its own employee—who assessed thousands of dollars of fines against Plaintiff, which Plaintiff was required to pay in order to appeal suspensively."[221] Unless the City does the same to other similarly-situated license holders, Plaintiff

---

[217] Rec. Doc. 13-1 at 15.

[218] *Id.* at 16.

[219] *Id.*

[220] Rec. Doc. 15 at 21.

[221] *Id.* at 22.

asserts that these factual allegations are sufficient to show equal protection as well as due process violations.[222]

a.    Due Process

Pursuant to the Due Process Clause of the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law"[223] "The due process clause protects against arbitrary deprivation of both property and liberty interests."[224] To establish a procedural due process claim, Plaintiff must show (1) that she was deprived of a life, liberty, or property interest protected by the Fourteenth Amendment, and (2) that the administrative procedures attendant to the deprivation did not satisfy the constitutional requirements of procedural due process.[225]

First, the Court considers whether Plaintiff has alleged a deprivation of a liberty or property interest protected by the Fourteenth Amendment.[226] Both the Supreme Court and the Fifth Circuit have recognized that licenses "qualify as property interests for purposes of procedural due process."[227] "This is because, once issued, 'a license may become essential in pursuit of a

---

[222] *Id.*

[223] U.S. Const. amend. XIV.

[224] *Wells v. Doland*, 711 F.2d 670, 675 (5th Cir. 1983).

[225] *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994) ("We analyze procedural due process questions using a two-step inquiry: First, we determine whether the state has deprived a person of a liberty or property interest; if there has been such a deprivation, we must determine whether the procedures relative to that deprivation were constitutionally sufficient.").

[226] *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995) ("In a section 1983 cause of action asserting a due process violation, a plaintiff must first identify a life, liberty, or property interest protected by the Fourteenth Amendment. . . .").

[227] *Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012) (quoting *Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977)). *See also Bell v. Burson*, 402 U.S. 535, 539 (1971).

livelihood.'"[228] "Because permits and licenses relate to the maintenance of a person's livelihood, '[s]uspension of issued licenses . . . involves state action that adjudicates important interests of the licensees.'"[229] "Therefore, once issued, a license or permit cannot be taken away by the State without due process."[230] Here, Plaintiff alleges that the City issued an STR License to Plaintiff, thereby allowing Plaintiff to operate a short-term rental business. Plaintiff had a property interest in the STR License, and the question is how much process was due—what procedural safeguards are necessary—before Plaintiff's property interest in the STR License could be terminated.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."[231] The Supreme Court has observed that "'[d]ue process is flexible and calls for such procedural protections as the particular situation demands.'"[232] In *Mathews v. Eldridge*, the Supreme Court prescribed the method by which courts determine whether certain administrative procedures satisfy the constitutional requirements of procedural due process.[233] Specifically, the Supreme Court held that due process generally requires balancing three discrete factors: (1) the private interests at stake, (2) the probable value of additional procedural safeguards, and (3) the government's interests, including the increased costs of additional procedures.[234]

---

[228] *Id.* (quoting *Bell*, 402 U.S. at 539).

[229] *Id.* (quoting *Bell*, 402 U.S. at 539).

[230] *Id.* (citing *Bell*, 402 U.S. at 539).

[231] *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

[232] *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

[233] *Id.*

[234] *Id*. at 334–35 ("[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official

The Fifth Circuit's opinion in *Bowlby v. City of Aberdeen* is instructive here.[235] There, the plaintiff was issued permits by the Aberdeen Planning and Zoning Board to operate a "Sno Cone" hut inside the city limits.[236] Two months later, the Board met and decided to revoke the permits it had issued to the plaintiff, without informing the plaintiff of the meeting or that the Board would be reviewing her permits.[237] The district court granted a Rule 12(b)(6) motion dismissing the plaintiff's procedural due process claim, and the plaintiff appealed.[238] The Fifth Circuit determined that because the plaintiff "was due predeprivation process, she suffered a due process injury when the City revoked her business permits, notwithstanding the fact that they may have been reinstated at some later date had she appealed the Board's decision."[239] The appellate court emphasized that "no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred" because "[a] due process injury is [] complete at the time process is denied."[240] Applying the *Mathews* factors, the Fifth Circuit found: (1) the plaintiff had a private interest in her ability to operate her business; (2) the city had not provided "any process prior to revoking [the] permits, which increase[d] the risk of an erroneous deprivation[,]" thereby proving that "any procedural safeguards would [have been] highly

---

action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.").

[235] *Bowlby*, 681 F.3d at 215.

[236] *Id.* at 218.

[237] *Id.*

[238] *Id.*

[239] *Id.* at 222.

[240] *Id.*

valuable;" and (3) "providing some sort of predeprivation procedure would [not have been] overly burdensome."[241] Therefore, the Fifth Circuit reversed the district court's dismissal of the procedural due process claim.[242]

It is difficult to glean the basis for Plaintiff's procedural due process claim from the allegations in the Amended Complaint. In the Amended Complaint, Plaintiff alleges that she was provided with the opportunity for a hearing on July 17, 2019. According to the Amended Complaint, during the hearing:

> Plaintiff explained that her re-issued license was not due to expire until August, 2019. Plaintiff further explained that she had nevertheless applied, three times, between April and July, 2019, to renew the license, but was told by the Department that she could not. The Department said that was because the Assessor had her property listed in his records as a condo, as described in Paragraph 25, above, and her homestead exemption was for the half she lived in, not the half she sought the license for. Plaintiff stated at the hearing that she had brought signed, sealed, numbered, original documents to the Department showing that the condominium regime on her house was no longer in effect, and she had done so even though the records of the Orleans Notarial Archives, where such documents are filed, are publicly available online. When asked why the Department had not consulted or considered these records, the Department's supervisor of enforcement replied "because that is not in my job description."
> At the hearing described in the previous paragraph, the hearing officer employed by the City assessed thousands of dollars of fines against Plaintiff, and other penalties, including refusal to grant her any future short term rental license, without review by a neutral authority. The City's procedures as described above deny Plaintiff's due process rights and the penalties deny her equal protection under the Fourteenth Amendment to the United States Constitution.[243]

In the instant motion, Plaintiff asserts that the City demanded to inspect her house without probable cause to believe that a violation had occurred.[244] However, this argument appears to relate

---

[241] *Id.* at 221.

[242] *Id.* at 226.

[243] Rec. Doc. 3 at 17–18.

[244] Rec. Doc. 15 at 21.

to Plaintiff's Fourth Amendment claim. Additionally, in the Amended Complaint, Plaintiff alleges that she "allowed" the City's inspector to inspect her rental home.[245]

Plaintiff also asserts that the City revoked her license without cause, declared her subsequently-issued license expired less than a year after the City issued it, and refused to issue Plaintiff another STR license.[246] It is unclear to the Court whether Plaintiff is alleging that she was denied pre-deprivation process. In the Amended Complaint, Plaintiff alleges that the City held a hearing on July 17, 2019, providing Plaintiff with notice and an opportunity to be heard. Plaintiff has not explained how this hearing was constitutionally deficient. Accordingly, the Court finds that Plaintiff has not pleaded adequate facts to support her due process claim. Nevertheless, the Court recognizes that a motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[247] Short of granting a motion to dismiss, the Court may grant Plaintiff leave to amend the complaint.[248] Accordingly, at this time, the Court will deny the City's motion to the extent it seeks dismissal of Plaintiff's due process claim, and grant Plaintiff leave to amend the complaint to address these deficiencies, if possible.

### b. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."[249] To establish an equal

---

[245] Rec. Doc. 3 at 9.

[246] Rec. Doc. 15 at 21.

[247] *Kaiser Aluminum*, 677 F.2d at 1050.

[248] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[249] *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

protection claim, a plaintiff must first show that "two or more classifications of similarly situated persons were treated differently" under the statute.[250] "Once that threshold element is established, the court then determines the appropriate level of scrutiny to apply."[251] "Strict scrutiny is required if the legislative classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution."[252] "If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relation to a legitimate governmental purpose."[253]

In the Amended Complaint, Plaintiff alleges that "[t]he ordinances deny to Plaintiff the rights to rent and advertise her residential property that the ordinances afford to other, similarly situated homeowners."[254] Plaintiff has failed to identify any instances where people similarly situated were treated differently. Therefore, Plaintiff has not alleged any facts to support an equal protection claim. As discussed above, short of granting a motion to dismiss, the Court may grant Plaintiff leave to amend the complaint.[255] Accordingly, the Court will deny the City's motion to the extent it seeks dismissal of Plaintiff's equal protection claim at this time, and grant Plaintiff leave to amend the complaint to address these deficiencies, if possible.

---

[250] *Duarte v. City of Lewisville*, 858 F.3d 348, 353 (5th Cir. 2017) (citing *Gallegos–Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012); *Stefanoff v. Hays Cty.*, 154 F.3d 523, 525–26 (5th Cir. 1998)).

[251] *Id.*

[252] *Id.* at 353–54 (quoting *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995)).

[253] *Id.* at 354 (citing *Richard*, 70 F.3d at 417).

[254] Rec. Doc. 3 at 16.

[255] *Carroll*, 470 F.3d at 1175.

## V. Conclusion

For the reasons discussed above, Plaintiff's claim that the City threatens to discontinue electric service to Plaintiff's home and place liens on her property is not ripe for judicial review because any decision to take the property is not final. Accordingly, this claim is dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1). Furthermore, to the extent Plaintiff is requesting leave of Court to amend the Complaint to allege a takings claim regarding the "taking" of her STR license, the Court denies Plaintiff's request to amend because the STR license is a privilege, not a right.

Accepting the allegations in the Complaint as true, the Court finds that Plaintiff has stated an excessive-fines claim against the City, and the Court will not reach the fact-specific proportionality evaluation at the motion to dismiss stage. Plaintiff has also alleged facts to show that the STR Ordinances are a "prior restraint" as opposed to a "subsequent punishment" that penalizes past speech. Accordingly, Plaintiff has stated a First Amendment claim against the City.

Plaintiff's Fourth Amendment claim appears to be moot because the provisions about which Plaintiff complains were removed from the Amended STR Ordinances. Nevertheless, short of dismissing the Fourth Amendment claim, the Court will grant Plaintiff leave to amend the complaint to allege a Fourth Amendment claim under the Amended STR Ordinances, if possible.

Regarding Plaintiff's Fourteenth Amendment claims, Plaintiff has not pleaded adequate facts to support her due process or equal protection claims. Nevertheless, short of granting the

motion to dismiss, the Court will grant Plaintiff leave to amend the complaint to address the deficiencies noted above, if possible.

Accordingly,

**IT IS HEREBY ORDERED** that the City's "Motion to Dismiss for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1) and for Failure to State a Claim upon which Relief can be Granted under Fed. R. Civ. P. 12(b)(6)"[256] is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that the motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's Fifth Amendment claims. Plaintiff's Fifth Amendment claims are **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(1). The motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend the complaint, within fourteen days of this Order, to address the deficiencies noted herein, if possible.

**NEW ORLEANS, LOUISIANA,** this  30th day of March, 2020.


**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[256] Rec. Doc. 13.